```
UNITED STATES DISTRICT COURT
    DISTRICT OF MINNESOTA
  CIVIL NO. 24-648 (DSD/ECW)
```

Kenneth Friend,

        Plaintiff,

v.                                          **ORDER**

Haleon US Holdings, Inc.,

        Defendant.

This matter is before the court upon defendant Haleon US Holdings, Inc.'s motion to compel arbitration and stay proceedings. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted.

## BACKGROUND[1]

This employment dispute arises from plaintiff Kenneth Friend's termination by his employer Haleon US Holdings, Inc. (Haleon). Friend worked for Haleon and its predecessor company beginning in 1987. Compl. ¶ 11. In September 2023, Haleon informed Friend that he was terminated due to violations of the company's code of conduct and confidentiality policy. Id. ¶¶ 83-84. Friend denies any engaging in any wrongdoing. Because he was

---

[1] This order will only recite facts relevant to the issues presented.

terminated for misconduct, Haleon did not offer him severance. Id. ¶¶ 91-92.

On March 1, 2024, Friend commenced this action alleging interference in violation of the Employee Retirement Income Security Act (ERISA), violation of the Minnesota Human Rights Act, and violation of the Americans with Disabilities Act. Haleon now moves to compel arbitration based on its Helping Employees Achieve Resolution of their concerns at work program (HEAR). Friend denies agreeing to participate in the HEAR program and argues that his ERISA claim is beyond its scope in any event.

The HEAR program launched on August 1, 2018. King Decl. ¶ 5; id. Ex. A, at 4. The program includes the following four-step approach to resolving workplace disputes: (1) share concerns with managers or through another "speak up" channel; (2) contact human resources (HR); (3) if still unresolved, initiate mediation before an independent third party; and (4) if mediation is unsuccessful, initiate arbitration. King Decl. ¶ 6; id. Ex. A, at 1. If employees did not opt out of the HEAR program by August 31, 2018, they were bound by its terms. King Decl. ¶ 7.

Haleon informed employees, including Friend, of the HEAR program repeatedly and in several ways. First, Haleon sent two emails - dated August 1 and August 15 – to employees regarding the HEAR program. See King Decl. Ex. D. The first email introduced the HEAR program and explained its terms in detail, including the

2

opt-out procedure. See id. It included a link to the HEAR webpage on the company's intranet system, which further described and explained the program, answered frequently asked questions, and provided the opt-out form. See id. Ex. F. The HEAR page also included the HEAR Legal Agreement for employee review. See id. Ex. D, at 2; see id. Ex. A. The HEAR Legal Agreement goes into greater detail about each step of the HEAR program, including in-depth information about the agreement to arbitrate. See id. Ex. A. The second email reiterated the information provided in the first email, including a reminder to opt-out by August 31, and provided links to the HEAR page and to the HR support center. King Decl. ¶ 16.

Second, on August 9, Haleon posted an article on the HEAR page explaining the program and the opt-out procedure and directing employees with questions to the HR support center. King Decl. Ex. G.

Third, the August 23 company newsletter's "To Know. To Do." section included a reference to the HEAR email and asked: "Have you decided which choice is best for you?" Id. Ex. H.

Haleon has received data indicating that Friend received both emails though his work account, and that he opened the first email six times. Id. ¶ 17. It is unclear whether he clicked on any links included in the emails or if he ever visited the HEAR page. Friend did not opt out of the HEAR program. Grogan Decl. ¶ 7.

3

Friend denies being aware of the "HEAR Legal Agreement" during his employment,[2] and does not recall reviewing any emails about the program. Friend Decl. ¶ 10. He also maintains that he was unaware of the opt-out process. Id. ¶ 14. He admits, however, that he "may" have opened an email "regarding changes to how Haleon deals with employment related disputes." Id. ¶ 12.

The narrow question now before the court is whether Friend, having failed to opt out, is bound by the HEAR agreement and must arbitrate his claims.

## DISCUSSION

Congress enacted the Federal Arbitration Act (FAA) to counteract "longstanding judicial hostility to arbitration agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). The role of the court is limited to determining the existence and scope of an agreement to arbitrate. Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001). Whether a valid agreement to arbitrate formed is

---

[2] Friend seems to be splitting hairs. He specifically denies being aware of the "HEAR Legal Agreement" while also acknowledging that he "may" have been aware of the HEAR program. Friend Decl. ¶¶ 10, 12. As will be discussed, Friend's stated unfamiliarity with the legal agreement itself does not preclude a finding that he is subject to its terms.

4

a question of contract. Keymer v. Mgmt. Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999).

"In determining whether the parties have agreed to arbitrate, state law contract principles apply, in accordance with the general policies governing arbitration agreements." Yufan Zhang v. UnitedHealth Grp., 367 F. Supp. 3d 910, 914 (D. Minn. 2019). "Under Minnesota law, a contract is formed when: 1) there is a definite offer; 2) acceptance of the offer; and 3) consideration." Id. (citing Thomas B. Olson & Assoc., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008)).

An offer must be "definite in form and must be communicated to the employee." Lang v. Burlington No. R. Co., 835 F. Supp. 1104, 1106 (D. Minn. 1993). Haleon argues that the August 1, 2018, email constituted an offer because it provided specific language explaining the HEAR program, the import of the arbitration agreement, and the opt-out procedure. See King Decl. Ex. D. The email also provided a link to the HEAR page, which contained the HEAR Legal Agreement and additional details about the program. Id. at 2.

Friend responds that the email does not constitute an offer because he does not recall clicking on the HEAR page link or accessing the HEAR Legal Agreement. But his recollection, or lack thereof, does not dictate whether a definite offer was indeed communicated to him. The record shows that it was and that he

received numerous reminders of the offer during the opt-out period. The record also shows that he opened the August 1 email six times, which demonstrates that he received it and was curious enough to open it repeatedly. The fact that he may not have read the HEAR Legal Agreement is irrelevant given that it was made available to him and referenced in several communications throughout the opt-out period. Under these circumstances, Friend's failure to review Haleon's offer - or recall whether he did - is irrelevant.

Haleon asserts that Friend accepted the offer by failing to opt out within the time permitted. Friend argues that he could not have agreed to the HEAR Legal Agreement because he never saw that document. He also denies being aware of the deadline to opt out of the HEAR program. As above, Friend's arguments in this regard are unpersuasive. He received the information he needed to make an informed decision as to whether he would agree to arbitrate workplace disputes. That information included details regarding how to decline Haleon's offer by opting out of the HEAR program. By failing to do so, he accepted the offer to arbitrate. See McMurray v. AT&T Mobility Servs., LLC, No. 21-cv-414, 2021 WL 3293540, at *4 (D. Minn. Aug. 2, 2021) (where the employer presented plaintiff with "a clear choice of whether or not to accept the Arbitration Agreement and provided him specific instructions on how to opt out[,]" his failure to opt out "plainly indicated acceptance of the Arbitration Agreement").

Further, the fact that neither party signed the arbitration agreement is immaterial.  It is well recognized that a signature is not required to form a contract in Minnesota or under the FAA.  See id. *4 n.5 (citing Gorham v. Benson Optical, 539 N.W.2d 798, 800 (Minn. Ct. App. 1995); Rust Consulting, Inc. v. Schneider Wallace Cottrell Konecky Wotkyns, LLP, No. 17-cv-4981, 2019 WL 3456891, at *3-4 (D. Minn. July 31, 2019); Filson v. Radio Advert. Mktg. Plan, LLC, 553 F. Supp. 2d 1074, 1086 (D. Minn. 2008)).

The court also finds that that the agreement to arbitrate was supported by adequate consideration given the parties' mutual promises.  See id. at *5 ("[U]nder Minnesota law, an exchange of mutual promise is adequate consideration to support a contract.).

Friend argues that even if the arbitration agreement is valid, it does not apply to his ERISA claim.  The ERISA claim is based on Haleon's failure to pay Friend severance after his termination.  Haleon persuasively argues that ERISA does not apply to severance payments, as such payments do not typically require ongoing administrative services.  But resolving that issue is beyond the court's purview in this case.  The arbitration agreement expressly states that issues "concerning arbitrability of a particular issue or claim ... must be resolved by the arbitrator, not the court."  King Decl. Ex. A, at 7.  As a result, the court will defer to the arbitrator on this issue.

The court denies Friend's request for limited discovery to determine what communications about the HEAR program Friend actually clicked on and opened, as such facts are irrelevant given the discussion above.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion to compel arbitration and stay proceedings [ECF No. 7] is granted; and

2. This matter is stayed pending completion of the arbitration.


Dated: May 7, 2024                s/David S. Doty
                                  David S. Doty, Judge
                                  United States District Court